UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **CRAIG S. BROOKS,** | * | |
| **Petitioner,** | * | |
| v | * | Civil Action No. GJH-21-2221 |
| **CARLOS D. BIVENS,** | * | |
|   *Warden*, | | |
| **MARYLAND ATTORNEY GENERAL,** | * | |
| **Respondents.** | * | |
| | *** | |

## MEMORANDUM OPINION

In their Answer to the above-entitled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, Respondents assert that the petition is time-barred and that there is no cognizable basis for reaching the merits of the claims asserted. ECF No. 3. Pursuant to *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002), Petitioner Craig S. Brooks was afforded an opportunity to explain why the Petition should not be dismissed as time-barred. ECF No. 4. Brooks, who proceeds pro se, asserts that: he is entitled to equitable tolling of the limitations period (ECF No. 8 at 5, 15): there are serious evidentiary issues indicating he is actually innocent (*id*. at 12); and the case should be held in abeyance so that he may pursue remedies in state court (Motion for Abeyance, ECF No. 9). No hearing is necessary to resolve the matters pending. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons set forth below, the petition shall be dismissed as untimely, the Motion for Abeyance is denied, and a certificate of appealability shall not issue.

I.      **Background**

    A.      **Guilty Plea and Sentencing**

On April 17, 2012, Brooks, represented by counsel, pleaded guilty to first-degree assault in the Circuit Court for Anne Arundel County, Maryland (Case No. 02-K-11-001952). The prosecutor explained that if the case had gone to trial the State

> would have shown on May 3rd, 2011, the victim in this case, Shaunte Clemons, who is now 50 years old, works nights and she works in a job that she had gotten home around 7:00 or 8:00 in the morning and went to bed.
>
> At about 9:08 in the morning hours, she heard a knock at her front doors. She lives at an address that is a cul-de-sac. It's 412 Bousch Place, B-o-u-s-c-h. It's off of Fern Road. She looked out of her bedroom window which is on the upper floor and saw a man who she described as a black male, about 6'2", mid to late 40s. He showed her what she believed was a PEPCO badge and stated there's a gas leak in the area; do you smell gas? She went downstairs to let him in, showed him where her basement was. It's sort of split level. You come in on one floor, down goes to the basement up to the living room, and then up one more is the bedrooms and bathroom.
>
> She showed him where the downstairs was and the basement. She then left him and went upstairs to brush her teeth and wash her face. He yelled upstairs to her saying he could not find the fuse box. She went down in the basement, showed him where it was as she did so, he put his arm around her neck and pulled out a gun. She is familiar with guns. She works with guns. Your Honor, in her job. She described it as a Sig Sauer. . . .
>
> Which is a handgun. She yelled up for her teenage son who was asleep in his bedroom. Her son did not respond. The person then told her to be quiet or he would shoot her, so she complied. He escorted her upstairs to her bedroom. He then duck-taped [sic] her on the feet and hands and her mouth. I'm sorry, that happens a few minutes later. He demanded to know where the safe was that she had in her house. She said she did not have a safe. He put a pillow near her head as if he was going to use it against her to shoot her and he kept saying, "Where's the safe?" He then taped her mouth so she could not talk much. He stuffed gauze in her mouth first and retaped her mouth. He began ransacking her house, checking all of the other dresser drawers, closet, mattress, everywhere, looking for a safe.
>
> After he finished in the bedroom, he came back into the other rooms—rather he came back into her room and stated that he was almost finished. He took a photo of her. She assumed it was with his phone, but she wasn't sure. She stated that if she identified him, his boys would get her.

He then proceeded down. . . .downstairs to search the rest of the house. After about 15 to 20 minutes he returned upstairs, told her to count backwards to 100 and that she better not scream. He did not leave right away, however, because she could hear movement. She waited another five minutes. When she didn't hear anymore movement, she wiggled the tape off of her mouth and called for her son. After about five attempts, her son heard her, came and helped her, got something to cut off the tape off her feet and hands with a knife.

As soon as she was free, she called 911. The police came and took her information. The police then canvassed the neighborhood, Your Honor. They found a nearby neighbor, a man, who described what he called a dark gray Honda pulling up in front of his home which is right next door to the victim's house and the victim live [sic] in a cul-de-sac and if you were to look out her front door and put your hand to the right, that neighbor's house is to the right. It's at the corner—at the beginning of the cul-de sac, where Fern and Boush Place intersect. . . .

That neighbor was curious because he had seen what he thought was a dark gray Honda parked very close to his driveway, almost, but not quite blocking the entrance to his driveway, so he watched this person. He gave a general description to the police.

Later, the police were able to develop a suspect when Mr. Brooks was arrested in another matter. The victim called the police up and notified them that she had seen Mr. Brooks' photo on Fox 45 D.C. website. She directed the police officer to that website and identified Mr. Brooks and I have a copy of that which I'd like to show to the court, I have given to Defense Counsel. . . .

She identified Mr. Brooks and he's the one with the red back on the photos, as the man who had robbed her. This is now two months later, July 13, approximately 2011. . . .

The police, with that information, came back to speak to the witness who had given a description of the vehicle, the dark gray Honda to Mr. Marvin Jones. And when they came to Mr. Jones's house, his wife had said that she had actually seen the person and perhaps she could see a photo array. She had not looked at any website or seen any photos of any suspect and did not know that there had been an arrest in another matter. She was shown a photographic array which we litigated last Friday, Your Honor, on a Motions hearing, Monica Yancy, and she identified Mr. Brooks as the man that she saw on the same day of the incident with M[s]. Clemons, parking his car very close to her driveway.

[Sh]e looked out a big picture window and saw him and identified him as the man that she had seen. She said that he had parked outside and eaten his lunch, got out of the car and walked near her house. She described him as wearing a uniform. She believed him to be a meter reader of some sort and watched him walk near her

3

> house, fully expecting him to walk up to her water meter on the side.  When he did not, she stopped watching.  She did not see him later in the day, but described his uniform, described what he was wearing, that he was carrying rather a clip board of some type and he looked like a utility worker or meter reader.
>
> Your Honor, the State also has evidence that incarcerated in an unrelated matter, Mr. Brooks sent letters or attempted to send letters out of the jail indicating an intent to have someone contact the witnesses, including Ms. Clemons and the witness, Ms. Yancy.  And reading between the lines, Your Honor, I have a copy of those which I can give to the court, describing them, describing where they live, describing their body type, height, physical build, address, vehicles they drove, and the State would have suggested that these were basically hit letters to have the witnesses taken out. . . .
>
> We had those letters confiscated. We had known samples of his handwriting submitted from the Prince George's County Detention Center.  We had those sent to Maryland State Police, Diane Lauder (phonetic), who is a handwriting expert, who would have been called a witness to testify that in her expert opinion those two letters which give all this information about the witness and the victim were the writings of Craig Brooks, the Defendant before the court.
>
> Your Honor, also, when Mr. Brooks was arrested in an unrelated matters, he was identified at a crime scene in another matter.  His Co-Defendant was arrested a short distance from that crime scene.  That Co-Defendant had a clip board with the victim's purported address of Fern Road.  Now, she lives at 412 Bush Place, but the addresses show Fern Road, so anyone who is not familiar with Bush Place, might call it 412 Fern Road because it's right on the corner.
>
> That Co-Defendant, who we would link to Mr. Brooks on the day of his arrest, had various papers of Mr. Brooks, including his birth certificate, his Social Security card, other papers in his name, and what appear to be a laundry list of addresses in the neighborhood where Ms. Shaunte Clemons lives, further linking Mr. Craig Brooks to the address at Shaunte Clemons.
>
> Your Honor, I've given the court photos. While Ms. Clemons would have identified Mr. Brooks as the man who tied her up, there was property taken, some odds and ends, some change and things like that, a camera, some other equipment, video equipment that was taken during this burglary, assault and attempted robbery, Your Honor.  All events occurred in Anne Arundel county and Mr. Brooks is the man to the left of his attorney in court today with salt and pepper gray hair.

ECF No. 3-2 at 30-36.

Defense counsel agreed that the State could prove all elements of the charge of first degree assault. ECF No. 3-2 at 37.  The Court found the facts sufficient and accepted Brooks's plea as

4

having been freely, voluntarily and intelligently made. ECF No. 3-2 at 37. The Court proceeded to sentencing that same day and sentenced Brooks to 25 years' incarceration without parole. *Id*. The state nolle prossed the remaining counts. ECF No. 3-1 at 14.

### B. Post-Conviction

On June 20, 2019, Brooks filed a Motion to Vacate Illegal Sentence. ECF No. 3-1 at 13. The motion, construed as a Motion to Correct Illegal Sentence, was denied on July 29, 2019. *Id*. at 12, 32-38.

Brooks filed a timely appeal. ECF No. 3-1 at 12. The Court of Special Appeals, in an unreported opinion, affirmed the circuit court's denial of the motion. *Id*. at 7. That opinion was withdrawn in order to correct the record, and on October 22, 2020, a revised unreported opinion, again affirming the denial of the Motion to Correct Illegal Sentence, was entered. *Id*. at 9, 39-42.

Thereafter, Brooks filed a petition for writ of certiorari which was denied on November 23, 2020. ECF No. 3-1 at 9. The court's mandate issued the following day. *Id*.

### C. Habeas Corpus Petition

Brooks's petition is deemed filed on August 25, 2021, the date he signed the petition. ECF No. 1 at 6; *see* Rules Governing Section 2254 Proceedings in the United States District Courts, Rule 3(d) (mandating prison-mail box rule); *Houston v. Lack*, 487 U.S. 266 (1988). He claims that he has been denied due process of law as guaranteed by the 5th, 6th, and 14th Amendments. ECF No. 1 at 9. He adopts the arguments he made to the state courts in his Motion to Vacate Illegal Sentence. *Id*. In essence he argues that his sentence is illegal because the State failed to give him advance notice of its intent to seek enhanced penalties. ECF No. 3-1 at 32-49.

## II. Standard of Review

### A. Statute of Limitation

5

A Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 is subject to the one-year filing limitation provisions found in § 2244, which provides that the filing period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). This one-year period, however, is tolled while properly filed state post-conviction proceedings are pending. *Id.* § 2244(d)(2).

"[T]he one year limitation period is also subject to equitable tolling in 'those rare instances where -- due to circumstances external to the party's own conduct -- it would be unconscionable to enforce the limitation against the party and gross injustice would result.'" *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). To be entitled to equitable tolling, a federal habeas petitioner must establish that either some wrongful conduct by Respondents contributed to his delay in filing his petition or that circumstances that were beyond his control caused the delay. *See Harris*, 209 F.3d at 330. A federal habeas petition does not toll the one-year limitation period. *See Duncan v. Walker*, 533 U.S. 167, 175 (2001) (a federal habeas petition is not an application for State post-conviction or

other collateral review within the meaning of § 2244(d)(2) and therefore does not toll the limitation period while it is pending).

**B.     Actual Innocence**

The Supreme Court has never held that habeas relief extends to freestanding claims of actual innocence. *Herrera v. Collins*, 506 U.S. 390, 404-405 (1993). "Courts have consistently emphasized that actual innocence for the purposes of *Schlup [v. Delo]*, 513 U.S. 298 (1995)] is a procedural mechanism rather than a substantive claim." *Finch v. McCoy,* 914 F.3d 292, 298 (4th Cir. 2019) (citing *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012)). Thus, a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review, *Schlup*, 513 U.S. at 326, or to overcome AEDPA's one-year statute of limitations, *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). Actual innocence, if then proven, "serves as a gateway through which a habeas petitioner may pass" when, for example, AEDPA's statute of limitations has expired. *Finch*, 914 F.3d at 294. If a petitioner satisfies the requisite standard, the district court may then consider the petitioner's procedurally defaulted claims. *Id*. at 298.

In order to show "actual innocence" in this context, the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *United States v. Mikalajunas*, 186 F.3d 490, 494 (1999) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to present a credible claim of actual innocence, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Schlup*, 513 U.S at 324.

7

Similarly, the Fourth Circuit has said in the context of a habeas case under 28 U.S.C. § 2254: "A valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" *Finch*, 914 F.3d at 298 (quoting *Schlup*, 513 U.S. at 325). Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'" *Finch*, 914 F.3d at 298 (quoting *Teleguz*, 689 F.3d at 329). It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ." *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)). "A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329.

**III.    Analysis**

There can be no doubt that Brooks's Petition has been filed outside of the one-year limitation period applicable to his conviction. The one-year filing period began on the date Brooks's conviction became final on direct review, May 17, 2012, which is the date his time expired for filing an application for leave to appeal the guilty plea. *See* Md. Rule 8-204(b)(2) (application for leave to appeal shall be filed within 30 days after entry of judgment form which the appeal is sought); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding judgment that is not reviewed by the Supreme Court "becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in [the Supreme] Court, or in state court, expires"). Brooks did not have any "properly filed application for State post-conviction or other collateral review" pending prior to the expiration of the one-year filing deadline therefore it was

not tolled under 28 U.S.C. § 2244(d)(2).  Nor do any of the other statutory tolling provision apply to Brooks's petition.

In his replies, Brooks does not assert that there was any impediment to filing his application, any newly recognized constitutional right, or any newly discovered factual predicate underlying his claims that would present a situation indicating that he timely filed his Petition within the one-year period.  *See* 28 U.S.C. § 2244(d)(1)(B)(C)(D).  *See generally* ECF No. 8, 9.

Rather, Brooks incorrectly asserts that the Petition is timely because he instituted this case within one year of the conclusion of his having litigated his Motion to Correct Illegal Sentence in state court.  While it is true that Brooks filed the instant case within one year of the conclusion of that review, as previously noted Brooks had no matters pending from the date his conviction became final on May 17, 2012, until he filed his Motion to Correct Illegal Sentence in state court on June 20, 2019, a period in excess of seven years. As such, the statute of limitations to file his federal habeas petition expired while he waited to pursue other state remedies. Brooks's properly filed state Motion to Correct Illegal Sentence cannot serve to toll the federal limitations period because it was filed after the one year deadline expired.  *See Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 200) (noting state post-conviction petition "filed following the expiration of the [federal] limitations period cannot toll that period because there is no period remaining to be tolled"). Nor can the Motion to Correct Illegal Sentence, filed after the federal statute of limitations expired, revive or reset the federal limitations period. *See Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) ("A state court filing after the federal habeas filing deadline does not revive it."); *see also Brown v. Langley*, 348 F. Supp. 2d 533, 536

(M.D.N.C. 2004) (holding that "subsequent motions or petitions cannot revive a period of limitation that has already run"). As such, the Petition is untimely.

In his response Brooks also alleges that there are "serious evidentiary issues (indicating actual innocence)." ECF No. 8 at 12. He does not explain what those evidentiary issues are. He also seeks discovery so that he can demonstrate his actual innocence but the information he seeks concerns the plea negotiations between his defense attorney and the State rather than any information concerning the underlying crime. *Id*. at 15.

First, discovery is not available as a matter of right in habeas corpus cases. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6(a) of the Rules Governing § 2254 Cases provides, in relevant part, "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." A federal habeas petitioner establishes the requisite good cause to conduct discovery "where specific allegations before the court show reason to believe that the Petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908–09 (internal quotation marks and citation omitted). "Good cause" requires more than a petitioner's conclusory assertion there may be some undiscovered or undisclosed evidence to support his claim. The rules governing discovery in habeas corpus cases do not countenance "a so-called fishing expedition via discovery, an effort to find evidence to support a claim." *Borden v. Allen*, 646 F.3d 785, 810 n. 31 (11th Cir. 2011); *see also Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (citations and quotations omitted) ("Rule 6 does not sanction fishing expeditions based on a petitioner's conclusory allegations. Conclusory allegations are not enough to warrant discovery under Rule 6; the petitioner must set forth specific allegations of fact."). Brooks has failed to provide any facts in support of his request for discovery.

Secondly, Brooks does not provide any evidence or even any allegations to support his conclusory claim of actual innocence. The complete lack of evidence in the face of Brooks's guilty plea does not and cannot sustain the indicia of reliability or credibility required by *Perkins* or *Shlup*. As noted, actual innocence is a difficult standard to establish and Brooks has not satisfied that standard.

Lastly, Brooks does not provide any arguments that would allow equitable tolling to save the late filing of the petition. Brook's limited knowledge of the law is not sufficient to establish equitable tolling. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) ("[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling."). As Brooks has not satisfied the standard for equitable tolling, the Court will dismiss his Petition as untimely.

Because the petition is untimely, there would be no benefit to Brooks to stay this case while he files a petition for post-conviction relief in state court. As discussed supra the timely filing of state post-conviction proceedings, after the federal limitations period has expired, cannot revive the federal limitations period. As such, the Motion to Hold Habeas Corpus in Abeyance (ECF No. 9) is denied.

IV.     **Certificate of Appealability**

When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rose v. Lee,* 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). This Court finds that Brooks has not demonstrated that a

certificate of appealability should issue. He may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

By separate Order which follows, the Petition for Writ of Habeas Corpus shall be dismissed as untimely; Brooks's Motion to Hold Habeas Corpus in Abeyance (ECF No. 9) shall be denied; and a certificate of appealability shall not issue.


<u>September 8, 2022</u>      <u>    /s/                                         </u>
Date      GEORGE J. HAZEL
      United States District Judge